[No. 197-2.    Division Two.    February 8, 1971.]

WILBURN LEE COOK et al., *Appellants*, v. DONA E. COOK, *Individually and as Executrix, Respondent.*

*Ernest L. Meyer,* for appellants.

*Francis J. Walker,* for respondent.

PEARSON, J.—This appeal involves the single question of whether or not appellants, as a matter of law, satisfied the quantum of proof necessary to establish an oral agreement to devise certain real estate in Thurston County in contradiction of the last will and testament of Dewey W. Cook, deceased. The trial court found that such burden of proof had not been met and dismissed the action brought against deceased's surviving spouse, Dona E. Cook, individually and as executrix of his estate.

Plaintiffs, Wilburn Lee Cook, Jerry Leland Cook, and Lela Mae Simon, are the three adult children of decedent by a former marriage with Anna Mae Cook. The latter died intestate on November 20, 1949. At that time, Wilburn Cook was of legal age (age 22), while Jerry Cook (age 19) and

Lela Mae (Cook) Simon (age 15) were minors. Among the assets of her estate was a 160-acre ranch in Thurston County.[1] During the course of probate in 1952, Wilburn Cook and Jerry Cook released their interest in the estate to their father. Jerry Cook had reached majority by that time. Distribution of the estate was made to decedent, Dewey W. Cook, with the exception of the interest of Lela Mae, who was still a minor.

On November 12, 1956, Lela Mae Cook, having then reached the age of majority, executed a quitclaim deed to decedent of her interest in the ranch. This was done ostensibly to clear title in decedent, so that the mineral rights could be leased to Shell Oil Company. Consequently, as far as the record title to the ranch was concerned, the decedent was sole owner of the ranch, as well as the entire estate, clear of any record claims of his children. The deed from the sons recited "love and affection" as consideration. The deed from Lela Mae recited "one dollar and other valuable consideration."

On March 23, 1953, decedent married defendant, Dona E. Cook. On April 1, 1954 he executed a will, expressly disinheriting the plaintiffs, leaving his entire estate to defendant. That will was duly admitted to probate as decedent's last will and testament.

The three plaintiffs were prevented by RCW 5.60.030[2]

---

[1] It appears that the ranch was the primary asset of the estate. Under then-existing laws of intestate succession, the children would have shared equally in one-half of their mother's community interest in the estate.

[2] This statute, known as the "dead man's statute," provides:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such

from giving direct testimony as to any oral agreement they had with their father at the time their respective interests in their mother's estate were released. However, six witnesses were called who related conversations with decedent at various times, from which conversations it could be strongly inferred that decedent had either received the releases and deeds from his children in exchange for his promise to leave them the ranch when he died, or that he had left the ranch to his children by will because of their releases.

On the other hand, defendant called four witnesses, who testified as to conversations with decedent, from which it could be inferred that plaintiffs had either been paid by decedent for their interest in their mother's estate or had received a settlement of some kind in exchange for their interests.

Plaintiffs were permitted, over defendant's objection, to testify that they had, in fact, received no monetary settlement from decedent.

■ Plaintiffs concede that the burden of proof of an oral contract to make a will is different and more exacting than the usual preponderance of the evidence standard applicable in most other civil actions. In *Arnold v. Beckman*, 74 Wn.2d 836, 447 P.2d 184 (1968), the Supreme Court reaffirmed the quantum of proof adhered to in many decisions involving oral contracts to devise or bequeath property, including the case of *Jennings v. D'Hooghe*, 25 Wn.2d 702, 172 P.2d 189 (1946).

In *Jennings* at page 706 the Supreme Court stated:

> The burden of proof was upon the proponent of the contract to prove it by evidence that was *conclusive, definite, certain, and beyond all legitimate controversy*. *Resor v. Schaefer*, 193 Wash. 91, 74 P. (2d) 917.

(Italics ours.) The elements of proof to which such burden applies are threefold: (1) that deceased agreed to leave

deceased or insane person, or by any such minor under the age of fourteen years: *Provided further,* That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

certain property to the claimant; (2) that the services contemplated as consideration for the agreement were actually performed; and (3) that the services were performed in reliance upon the contract. *Jennings v. D'Hooghe, supra.*

Plaintiffs' attack on the court's findings and conclusion that they had not sustained the burden of proof is twofold: (1) that it is an erroneous conclusion, since the *undisputed* evidence established that an agreement to devise was made; and (2) if they did not, in fact, meet the burden, then the quantum of proof required is an impossible one, effectively nullifying the enforceability of oral contracts to devise or bequeath property.

In answer to plaintiffs' first contention, we disagree. There were two inferences which the trial court could draw from the testimony, one tending to establish an oral agreement (at least with respect to the two sons) and the other, tending to support the defendant. It was fully within the trial court's province to determine the existence of a "legitimate controversy" and conclude that plaintiffs had failed in their burden of proof. *Bicknell v. Guenther,* 65 Wn.2d 749, 399 P.2d 598 (1965).

In *Bicknell,* the evidence of the oral contract, as here, consisted of testimony of several witnesses who had conversations with the deceased from which an oral agreement to devise could be inferred. In the face of the announcement of the trial court to the effect that an oral agreement was overwhelmingly established, the Supreme Court reversed and in so doing stated at page 754:

> In the usual case tried to the court, we accept the findings of fact as verities if there is substantial evidence (as compared to a mere scintilla) to support them. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.(2d) 570, 343 P.(2d) 183 (1959). In the case at bar, and in similar cases involving an oral contract to devise or bequeath the property, under the rule of the *Jennings* case, we have a duty to determine whether the existence of such alleged contract has been proven definitely, certainly, conclusively, and beyond all legitimate controversy. We are of the opinion that plaintiff has failed to sustain this burden of proof, which is heavier because of the nature of the

contract and of this court's skeptical view of such agreements.

Aside from reaffirming the strict rule of *Jennings,* the Supreme Court placed even more stringent restrictions upon the trial court's ability in this kind of case to determine credibility and otherwise exercise its equitable powers. It did so by rejecting the usual rule of appellate review. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). In our opinion, the decision of the trial court in the case before us was compelled by *Bicknell v. Guenther, supra.*

Plaintiffs contend that application of the Jennings rule effectively prevents proof of oral contracts to devise or bequeath property. Such a position has been well expressed in the two dissenting opinions in *Bicknell v. Guenther, supra,* and we will not belabor the subject further, since the Supreme Court has again in 1968 reaffirmed its adherence to *Jennings* by a unanimous departmental opinion, *Arnold v. Beckman, supra.*

We tend to agree that there now is an aura of impossibility surrounding proof of this type of agreement as to well nigh nullify them altogether. The case before us is an example where plaintiffs' proof of such agreement was persuasive, yet not conclusive and certainly not beyond all legitimate controversy. Doubt arises because defendant's witnesses, vague as their testimony was, interjected the inference that plaintiffs had received some payment for releasing their interests in their mother's estate—a fact which they emphatically deny. Doubt also can be found in the fact that the testimony was not exact as to either the time or terms of the contract.

This court recognizes the desirability of the policy expressed in many cases, including *Bicknell v. Guenther, supra,* of regarding oral contracts to devise or bequeath property with great suspicion and this policy should particularly pertain where the alleged oral contract contradicts the written desires of the decedent as expressed in his last will and testament. The policy of *Jennings* is, of course, in-

ferentially recognized by the "dead man's statute" which places a severe legislative impediment to proof of the oral contract to devise.

However, where the burden of proof has become so strict and the trial court's traditional function to decide disputed facts and weigh the witnesses' credibility has become so limited (as it has because of *Bicknell*), it is perhaps time that we call a spade a spade and announce that oral contracts to devise or bequeath property are, in fact, against the public policy of this state, particularly where they are in conflict with the decedent's will. However, this court believes such an announcement rightfully belongs with the Supreme Court or with the legislature.

A commendable alternative would be to redefine our "burdens of proof" so as to give our trial courts more objective standards for either rejecting or allowing oral contracts to devise or bequeath property.

In 41 Wash. L. Rev. 109 (1966) the Honorable Lloyd L. Wiehl, Judge of the Superior Court, Yakima County, Washington, gives consideration to the various standards of proof we apply in several types of civil actions and proposes a commendable solution. Acceptance of such an alternative solution also, we think, rightfully belongs with the Supreme Court or with the legislature.

Under the present state of the law and the policy explicitly declared, the judgment of the trial court must be affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied March 9, 1971.

Review granted by Supreme Court May 6, 1971.